UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEANNE POWERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. 1:18-cv-000623 |
| | ) |
| NEWELL BRANDS, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**GRANTING PLAINTIFF'S CROSS MOTION TO AMEND**
(Docs. 5, 12)

Plaintiff Leanne Powers brings this action against Defendant Newell Brands, Inc., asserting claims of negligence, strict liability, and breach of the warranty of merchantability. She alleges that in February 2015 she purchased a "candle tart" from The Yankee Candle Company, Inc. ("Yankee Candle") and suffered serious and permanent injury when the glass used with the candle tart shattered and sliced her wrist. She alleges that Defendant, as the parent company of Yankee Candle, is liable for her injury. In the event that Defendant is not liable, she seeks to amend her Complaint to add Yankee Candle as a defendant. Defendant moves for summary judgment in its favor and opposes the proposed amendment to the Complaint, arguing there is no factual or legal basis for its liability and that Plaintiff may not rely on the relation back doctrine to cure the deficiencies in her Complaint so as to avoid the applicable statute of limitations.

Plaintiff is represented by Jason R. DiPasquale, Esq. Defendant is represented by John P. Freedenberg, Esq.

## I. The Undisputed Facts.

Defendant's statement of undisputed material facts in support of its motion for summary judgment was not disputed by Plaintiff as required by Fed. R. Civ. P. 56(e)(2)[1] and L. R. Civ. P. 56(a)(2).[2] Defendant's statement is therefore deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

On December 28, 2017, Plaintiff filed suit in New York state court. On February 13, 2018, Defendant answered the Complaint and, after the amount in controversy was established, removed the suit to federal court. In her Complaint, Plaintiff alleges a February 2015 injury. At the time of her injury, it is undisputed that Jarden Corporation owned Yankee Candle, but did not manufacture, distribute, or sell candle products itself. Defendant had no ownership interest in Yankee Candle at the time.

In April 2016, Newell Rubbermaid, Inc. acquired Jarden Corporation and its subsidiaries, including Yankee Candle. Defendant is the entity that emerged from this transaction. Defendant, through intermediary entities, now owns the shares of Yankee Candle.

Defendant maintains a distinct corporate existence from Yankee Candle. Correspondingly, Yankee Candle is a separate and distinct corporation with its own directors, officers, corporate record-keeping, places of business, adequate capitalization,

---

[1] "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2).

[2] Under L. R. Civ. P. 56(a)(2):

> The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs . . . . Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.

and fund management. When she filed her Complaint, Plaintiff was or should have been aware that Yankee Candle distributed the candle tart alleged to have caused her injury.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248).

The court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

"Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (alteration in original) (internal quotation marks omitted). "Thus, a nonmoving party can defeat a summary judgment motion only by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." *Id.* at 166-67 (alteration in original) (internal quotation marks omitted). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact

3

where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (citation omitted).

There is no genuine dispute where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether . . . ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255.

### B. Whether Defendant Can be Held Liable for the Alleged Acts or Omissions of Yankee Candle.

Defendant seeks summary judgment in its favor because there is no factual or legal basis for holding it liable for Yankee Candle's acts or omissions which gave rise to Plaintiff's alleged injury. As it points out, it acquired Yankee Candle's shares more than a year after Plaintiff alleges she was injured and there is no evidence that it assumed tort liability for this incident. Defendant further asserts that there is no factual or legal basis for piercing its corporate veil. The court agrees.

"As a general rule, the law treats corporations as having an existence separate and distinct from that of their shareholders and, consequently, will not impose liability upon shareholders for the acts of the corporation[.]" *Billy v. Consol. Mach. Tool Corp.*, 412 N.E.2d 934, 941 (N.Y. 1980). "[T]he avoidance of personal liability for obligations incurred by a business enterprise is one of the fundamental purposes of doing business in the corporate form[.]" *Id.*

> It is true that, on occasion, the courts will disregard the separate legal personality of the corporation and assign liability to its owners where necessary to prevent fraud or to achieve equity[.] But, such liability can never be predicated solely upon the fact of a parent corporation's ownership of a controlling interest in the shares of its subsidiary. At the very least, there must be direct intervention by the parent in the management of the subsidiary to such an extent that the subsidiary's paraphernalia of incorporation, directors and officers are completely ignored[.]

*Id.* (citations and internal quotation marks omitted).

To pierce the corporate veil, a plaintiff must "make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). The Second Circuit has identified the following factors as relevant to a determination as to whether to pierce the corporate veil:

> (1) whether corporate formalities are observed, (2) whether the capitalization is adequate, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) whether there is overlap in ownership, officers, directors, and personnel, (5) whether the corporate entities share common office space, address and telephone numbers, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the alleged dominator deals with the dominated corporation at arms length, (8) whether the corporation is treated as an independent profit center, (9) whether others pay or guarantee debts of the dominated corporation, and (10) whether the corporation in question had property that was used by the alleged dominator as if it were the dominator's own.

*Id.*

"Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). Instead,

> a buyer of a corporation's assets will be liable as its successor if: (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

*Id.* (internal quotation marks omitted).

At the time Plaintiff alleges she was injured, Defendant had no ownership in or domination or control over Yankee Candle. Plaintiff cites no evidence to the contrary.[3]

---

[3] Although there is no evidence regarding some of the relevant factors, it is Plaintiff's burden to proffer this evidence in order to pierce Defendant's corporate veil. *See Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (stating "the party seeking to pierce a corporate veil" has the burden of proof).

5

She also cites no evidence that Defendant expressly or impliedly assumed Yankee Candle's tort liability, merged with Yankee Candle, is a mere continuation of Yankee Candle, fails to deal with Yankee Candle at arm's length, or acquired Jarden Corporation to fraudulently escape its obligations.

Defendant maintains a distinct corporate existence from Yankee Candle, and Yankee Candle remains a separate corporation with its own distinct indicia of corporate identity, including directors, officers, corporate record-keeping, places of business, adequate capitalization, and fund management. In such circumstances, there is neither a factual nor legal basis for holding Defendant liable for Yankee Candle's acts or omissions. Assuming *arguendo* that Plaintiff could plausibly establish Defendant's present domination over Yankee Candle, Plaintiff has proffered no evidence to establish that "such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Am. Fuel Corp.*, 122 F.3d at 134.

For the reasons stated above, Defendant's motion for summary judgment is GRANTED.

### C. Whether Plaintiff May Amend Her Complaint to Add Yankee Candle as a Defendant.

In the event Defendant's motion for summary judgment is granted, Plaintiff requests leave to amend her Complaint to remove Defendant and add Yankee Candle as a defendant. As there is no evidence that Plaintiff proceeds in bad faith, no evidence of prejudice to Defendant, and no argument that amendment would be futile, leave to amend is hereby GRANTED. *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("When a party requests leave to amend his complaint, permission generally should be freely granted.").

Plaintiff further seeks relation back of her amendment under Fed. R. Civ. P. 15(c)(1)(C) to the filing of her initial Complaint. An amendment to a pleading relates back to the date of the original pleading when:

6

the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Fed. R. Civ. P. 15(c)(1)(B) provides that an amendment may relate back to the date of the original pleading when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" There is no dispute that Plaintiff's proposed amendments arise out of the same conduct, transaction, or occurrence as is set forth in her Complaint.

With regard to changing the real party in interest, in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010),[4] the Supreme Court held "that relation back should not be denied solely on the basis that a plaintiff already knew the correct identity of the defendant." *Talton v. Amalgamated Transit Union*, 962 F. Supp. 2d 504, 507 (W.D.N.Y. 2013). Instead, mistaken identity includes when:

> a plaintiff might know that the prospective defendant exists but nonetheless harbor[s] a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

*Krupski*, 560 U.S. at 549.

---

[4] After being injured on a cruise ship, Ms. Krupski sued Costa Cruise, the sales and marketing agent for Costa Crociere, which owned and operated the cruise ship. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541-44 (2010). Under Rule 15(c)(1)(C), the Court concluded Costa Crociere had constructive notice of the lawsuit during the Rule 4(m) period for service because it should have known that the action would have been brought against it but for a mistake concerning the proper party's identity because the complaint "made clear that Krupski meant to sue the company that 'owned, operated, managed, supervised and controlled' the ship on which she was injured and also indicated (mistakenly) that Costa Cruise performed those roles[.]" *Id.* at 554. The Court observed that "Costa Cruise and Costa Crociere are related corporate entities with very similar names[.]" *Id.* at 556.

Plaintiff asserts that neither Defendant nor Yankee Candle would suffer prejudice if relation back were permitted because Yankee Candle would assert the same defenses raised by Defendant and neither discovery on the merits nor pretrial mediation has occurred. She also points out that the statute of limitations has not yet run on her claim for breach of the implied warranty of merchantability and that Defendant had clear notice that Yankee Candle contributed to her injury as alleged in her Complaint.[5] Defendant responds that a mistaken legal judgment and lack of due diligence does not warrant invocation of the relation back doctrine.

Plaintiff has proffered evidence that she advised Yankee Candle of her injury in and around 2015 and attaches to her attorney's declaration an August 26, 2015 demand letter directed to "Yankee Candle Consumer Affairs." *See* Doc. 12-10. She further notes that Defendant's Chief Legal and Administrative Officer and Corporate Secretary is also Yankee Candle's Corporate Secretary and Director. This renders it reasonable to assume that service of the Complaint on Defendant put Yankee Candle on notice of Plaintiff's claims as well. *See Fogel v. Wal-Mart de Mexico SAB de CV*, 2017 WL 751155, at *11 (S.D.N.Y. Feb. 27, 2017) (noting the Supreme Court's "intent was to draw a line that would protect the strong interest in repose of a prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him") (quoting *Krupski*, 560 U.S. at 550) (alteration and internal quotation marks omitted). Defendant proffers no evidence to the contrary.

Plaintiff further alleges that, following the 2016 merger between Jarden Corporation and Newell Rubbermaid, Inc., Defendant and Yankee Candle share "some of

---

[5] In her Complaint, Plaintiff alleges she "purchased a candle tart from the Defendant's subsidiary, YANKEE CANDLE. At the time of purchase, the [Plaintiff] was not given any special instructions or warnings on the use of the product purchased[.]" (Doc. 5-2 at 4, ¶ 4.) She further alleges "the Defendant, NEWELL BRANDS, INC. through its subsidiary, YANKEE CANDLE, was and presently is engaged in the design, manufacture, assembly, marketing, distribution and promotion of the product at issue herein, specifically, a candle tart[,]" *id.* at 6, ¶ 12, and that "the Defendants, NEWELL BRANDS, INC. and its subsidiary YANKEE CANDLE, . . . were careless and negligent in improperly designing, testing, inspecting, manufacturing, packaging, distributing, labelling, selling, promoting, repairing and maintaining the said candle tart." *Id.* at 6, ¶ 16.

8

the same Officers and Directors, Yankee Candle leases space from Defendant owned property, Yankee Candle's revenues show on the Financial Statements of the Defendant[], Jarden Corporation was converted from a holding company to being part of Defendant's operations after acquisition." (Doc. 12-11 at 2.) Plaintiff cites documentation provided by Defendant which supports her contention that Defendant and Yankee Candle "have a convoluted corporate structure that still is not entirely clear as to whether Yankee Candle is even sufficiently independent of Defendant," *id.* at 9, and which rendered it "reasonable to believe that Yankee Candle was owned and operated by Defendant and a mere extension of them[.]" (Doc. 12-1 at 8.) More specifically, she includes the following arguably confusing excerpt from Defendant's Financial Statements:

> On April 2015, 2016, Jarden Corporation ("Jarden") became a direct wholly-owned subsidiary of Newell Brands Inc. as a result of a series of merger transactions . . . pursuant to an Agreement and Plan of Merger dated December 13, 2015 (the Merger Agreement). Following the Jarden Acquisition, the Company was named Newell Brands, Inc. Jarden was a leading, global consumer products company with leading brands, such as Yankee Candle. The Jarden acquisition was accounted for using the purchase method of accounting, and Jarden's assets, liabilities and results of operations are included in the Company's financial statements.

*Id.* at 4 (emphasis omitted).

In opposing relation back, Defendant cites pre-*Krupski*, out-of-circuit authority for the proposition that Plaintiff's mistaken legal judgment about the relationship between Defendant and Yankee Candle does not constitute a "mistake" for the purposes of Rule 15(c)(1)(C)(ii). *See* Doc. 13 at 4 (citing *Shea v. Esensten*, 208 F.3d 712 (8th Cir. 2000)). However, *Krupski* makes clear that "[t]he question under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of [the defendant] as the proper defendant, but whether [the defendant] knew or should have known that it would have been named as a defendant but for an error." *Krupski*, 560 U.S. at 548. *Krupski* thus "clarified and expanded" the relation back doctrine and "represented a sea change in the way the relation back doctrine was applied in the Second Circuit." *Talton*, 962 F.

Supp. 2d at 507. "Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity. For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake." *Krupski*, 560 U.S. at 548. "This reading is consistent with the purpose of relation back: to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Id.* at 550.

"Plaintiff has the burden to demonstrate that [s]he has met the requirements of Fed. R. Civ. Proc. 15(c)(1)(C)[.]" *Talton*, 962 F. Supp. 2d at 506. This includes showing that Yankee Candle "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Although a close question, Plaintiff has satisfied her burden of proof. The Complaint is replete with references to Yankee Candle as the tortfeasor that allegedly caused her injury. Defendant does not claim that it reasonably interpreted her claims in any other manner. Pursuant to Fed. R. Civ. P. 15(c)(1)(C), Plaintiff's proposed amendment to her Complaint to substitute Yankee Candle for Defendant relates back to the filing date of her Complaint.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion for summary judgment (Doc. 5) and GRANTS Plaintiff's motion to amend. (Doc. 12.)
SO ORDERED.

Dated at Burlington, Vermont this 14th day of June, 2019.

Christina Reiss, District Judge
United States District Court